Horace BROUGHTON, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (DISPOSAL CORPORATION OF AMERICA), Respondent.

DISPOSAL CORPORATION OF AMERICA and Westmoreland Casualty Insurance Company in Liquidation, PA Workers' Compensation Security Fund and Inservco Insurance Services, Petitioners,

v.

WORKERS' COMPENSATION APPEAL BOARD (BROUGHTON), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 1998.

Decided March 20, 1998.

Reargument Denied May 11, 1998.

---

Kathy Kennedy, Philadelphia, for petitioner.

Stacy Ip, Philadelphia, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Before this Court[1] are cross-appeals filed by the Disposal Corporation of America (Employer) and Horace Broughton (Claimant) from a July 30, 1997 order of the Workers' Compensation Appeal Board (Board) reversing in part and modifying in part a decision of a Workers' Compensation Judge (WCJ) granting Employer's termination petition and petition to review medical benefits.

Claimant worked for Employer as the driver of a trash container vehicle. On September 24, 1985, he injured his back when a container hit the vehicle he was driving. A notice of compensation payable was issued awarding Claimant weekly benefits based on his lumbosacral sprain. On May 19, 1988, Employer filed a termination petition alleging that as of April 19, 1988, Claimant was fully recovered and able to return to work without restriction. On May 2, 1990, Employer filed a petition to review medical records requesting review of the medical bills submitted by Claimant's treating physician, Natawadee Steinhouse, M.D. and alleging that Claimant might be receiving excessive medical treatment.

Before the WCJ, Employer presented the testimony of Noubar A. Didizian, M.D., a physician board certified in orthopedic surgery, who testified that he performed a medical examination and evaluation of Claimant on December 12, 1990. Dr. Didizian testified that he obtained Claimant's medical records and a history from Claimant himself, after which he performed a physical examination of Claimant. As a result, he opined that the neurologic examination of Claimant was completely negative for any nerve impingement, sciatica and radiculopathy. He admitted that prior radiological examinations, including an MRI from 1986, demonstrated evidence of bulging at the L4–L5 level, but found no objective evidence of a herniated nucleus pulpous or other neural compromise. Dr. Didizian opined that as of the date of his examination, Claimant was capable of returning to his pre-injury employment as a garbage truck driver for Employer without restriction.

Claimant testified before the WCJ that even though he was in pain, he could work full-time driving a truck. He stated that he had tried to find work but had been unsuccessful. Also testifying on behalf of Claimant was Dr. Steinhouse and Corey Ruth, M.D., a physician board certified in orthopedic surgery. Dr. Steinhouse diagnosed Claimant as suffering from chronic lumbosacral pain, a herniated nucleus pulpous at the L4–L5 level, headaches, seizures, numbness and burning in both lower legs, post-traumatic anxiety disorder and mental instability, all of which were caused by the September 24, 1985 work-related injury. He stated that

1. This case was reassigned to the authoring judge on February 24, 1998.

Claimant was unable to return to his pre-injury position or any other gainful employment. Dr. Ruth diagnosed Claimant as suffering from a herniated disc at the L4–L5 level with a left L5–S1 lumbar radiculopathy. He, too, opined that Claimant's condition was a result of his work-related injury and that Claimant could not return to either his pre-injury duties for Employer or any other type of regular, gainful employment.

The WCJ found the testimony of Dr. Didizian more credible than the testimony of Drs. Steinhouse and Ruth because Claimant's own testimony that he believed he could return to work contradicted that of his physicians. Also, the WCJ found that the testimony of Drs. Steinhouse and Ruth contradicted each other as to the existence of Claimant's alleged seizures, mental instability and anxiety. Accordingly, the WCJ found that Claimant had recovered from his work injury as of December 12, 1990. Based on this finding, the WCJ concluded that Employer had sustained its burden of proving entitlement to a termination as of December 12, 1990,[2] and that it was not liable for payment of Claimant's medical expenses after that date.

Claimant appealed the WCJ's grant of both petitions to the Board contending that the WCJ erred by granting Employer's termination petition since Dr. Didizian did not state that he was fully recovered or that his disability had ceased. Claimant also contended that the WCJ erred by ordering that Employer's liability for payment of his medical bills cease as of December 12, 1990, because Employer was obligated to pay all outstanding medical bills until the date of the WCJ's decision on October 24, 1995.

The Board held that there existed no evidence in the record that Dr. Didizian had testified Claimant had fully recovered so that the WCJ's decision was not supported by substantial competent evidence. The Board modified the WCJ's decision and suspended, rather than terminated, Claimant's benefits as of December 12, 1990. In addition, because it determined that the termination petition should not have been granted, the Board held that Employer's liability for medical expenses should not have been terminated and reversed the WCJ's decision terminating those expenses.

Employer filed a petition for review with this Court alleging that the Board erred as a matter of law in reversing the WCJ's order terminating benefits. Claimant also filed a petition for review contending that the Board erred as a matter of law in suspending his benefits and in failing to award litigation costs despite the decision in his favor. Both petitions have been consolidated for our review.[3]

On appeal, Employer contends that the Board erred in modifying in part and reversing in part the WCJ's decision granting its termination and review petitions. It argues that Dr. Didizian's failure to use the words "fully recovered" is not fatal to the termination petition because the unequivocal medical testimony of Dr. Didizian, as a whole, establishes that Claimant had fully recovered from the work injury as of December 12, 1990.

■ Under Section 413 of the Workers' Compensation Act (Act),[4] 77 P.S. § 772, a WCJ may modify, reinstate, suspend or terminate benefits upon proof that the disability of the injured employee has increased, decreased, recurred or has temporarily or finally ceased. In seeking a termination of benefits, the employer must prove that all disability related to a compensable injury has ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* —— Pa. ——, 705 A.2d 1290 (1997). In *Udvari,* our

---

2. In its petition, Employer had requested a termination as of April 19, 1988, based upon an examination of Claimant on that date by Joseph Iannotti, M.D. Counsel objected to the admission of Dr. Iannotti's report during Dr. Didizian's deposition, and the WCJ concluded that Dr. Iannotti's report was inadmissible hearsay and not competent to support a finding.

3. Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether substantial evidence supports the findings of facts. 2 Pa.C.S. § 704; *Vazquez v. Workmen's Compensation Appeal Board (Masonite Corporation),* 687 A.2d 66 (Pa.Cmwlth.1996).

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

Supreme Court stated that an employer meets that burden when:

> [a]n employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

■ Even though Dr. Didizian did not explicitly state that Claimant had fully recovered, his testimony as a whole constitutes substantial evidence in support of the WCJ's finding that Claimant had fully recovered from his work-related injury and was able to return to work. Dr. Didizian testified that as of his examination of Claimant on December 12, 1990, Claimant had no nerve root impingement, sciatica, disc herniation, neural compromise or radiculopathy. His testimony revealed no objective orthopedic findings to support Claimant's complaints and he unequivocally stated that Claimant could return to work without restriction.

A medical opinion that, as here, is unequivocally rendered is sufficient without resort to "magic words" such as "fully recovered." *Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, 132 Pa. Cmwlth. 47, 571 A.2d 1108 (1990). Moreover, credibility determinations are within the sole province of the WCJ and the WCJ is free to accept or reject the medical testimony of any witness, in whole or in part. *Hills Depart-*

*ment Store No. 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa. Cmwlth. 354, 646 A.2d 1272 (1994), *petition for allowance of appeal denied*, 540 Pa. 587, 655 A.2d 518 (1995). Accordingly, because substantial evidence supports the WCJ's finding that Claimant had fully recovered as of December 12, 1990, the decision of the Board is vacated and the WCJ's decision granting Employer's termination petition as of that date is reinstated.[5]

■ While the decision of the WCJ granting the termination petition is reinstated, we decline to reinstate that part of the decision terminating Claimant's medical benefits as of December 12, 1990. Before the Board, Claimant correctly argued that Employer was responsible for the payment of medical expenses through the date of the WCJ's decision. Even though the grant of the termination petition ended Employer's liability for medical expenses as well as weekly benefits, Employer was nonetheless required to pay all causally related medical expenses incurred by Claimant until the date of the WCJ's decision, and the WCJ erred by ending Employer's liability at a date prior to its decision. *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa.Cmwlth. 468, 641 A.2d 655 (1994).[6]

Accordingly, we vacate the order of the Board and reinstate that portion of the WCJ's decision granting Employer's termination petition as of December 12, 1990. As to that portion of the WCJ's decision order-

---

5. Claimant filed a cross-appeal contending that the Board erred in modifying the WCJ's decision to order suspension of his benefits because the medical evidence accepted by the WCJ did not establish that he had fully recovered from the work-related injury. Because we have determined that the WCJ's decision was supported by *substantial evidence* and have reinstated the WCJ's decision terminating benefits as of December 12, 1990, Claimant's contention that the Board erred in modifying that termination to a suspension is now moot.

Claimant also argues that the Board erred in not awarding costs under Section 440 of the Act, 77 P.S. § 996. Section 440 provides that in any contested case where the employer contests liability, including termination proceedings, the

claimant in whose favor the matter at issue has been finally determined shall be awarded a reasonable sum for costs. Because the matter at issue has been finally determined in favor of Employer, not Claimant, this argument is likewise moot.

6. Although most of the medical bills in this case have been incurred prior to July 2, 1993, when what is commonly known as "Act 44" of the Act was enacted, if any bills were incurred subsequent to Act 44, they are controlled by the provisions of that Act. *See Warminster Fiberglass v. Workers' Compensation Appeal Board (Jorge)*, 708 A.2d 517 (Pa.Cmwlth.1998). Our holding in *Stonebraker* was legislatively superseded by Act 44. *Albert Einstein Medical Center v. Workers' Compensation Appeal Board (Perkins)*, 707 A.2d 611 (Pa.Cmwlth.1998).

ing that Employer's liability for Claimant's medical expenses ceased as of December 12, 1990, we modify that order to reflect cessation of liability for those medical bills as of the October 25, 1995 date of the WCJ's order.

### ORDER

AND NOW, this 20th day of March, 1998, the order of the Workers' Compensation Appeal Board is vacated and the order of the WCJ is reinstated as to the termination petition. Disposal Corporation of America is responsible for the payment of all medical expenses incurred by Horace Broughton up until October 25, 1995.

Senior Judge JIULIANTE dissents.